United States District Court
Southern District of Texas
**ENTERED**
August 27, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARMANDO HERNANDEZ, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-04592 |
| | § | |
| FVE MANAGERS, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This case arises from allegations of employment discrimination. Pending before the Court is Defendants' Opposed Motion to Compel Arbitration and Dismiss Complaint. (Dkt. 12) and Plaintiff Armando Hernandez's ("Hernandez") Motion for Leave to File Sur-Reply (Dkt. 27). The Court, having carefully reviewed the motions, responses, supplemental response, replies, and applicable law, **DENIES** Plaintiff's motion and **GRANTS in part** and **DENIES in part** Defendants' motion.[1]

## I.    Hernandez's Motion for Leave to File Sur-Reply

Hernandez filed a Motion for Leave to File Sur-Reply (Dkt. 27), to which Defendants responded (Dkt. 29), and Hernandez replied (Dkt. 30). Having considered the briefing and the applicable law, the Court will deny Hernandez's motion because Defendants did not raise in their reply (Dkt. 26) any new arguments warranting a sur-reply. *See Harvey v. Preload, L.L.C.*, No. 23-30120, 2023 WL 6442598, at *4 (5th Cir. Oct. 3,

---

[1] Hernandez has requested oral argument on Defendants' motion (*see* Dkt. 23 at 5, Dkt. 27 at 2). The Court finds that oral argument would not be helpful in resolving the pending motion and **DENIES** those requests.

2023) (holding that district court did not abuse discretion in denying plaintiff's motion for leave to file a sur-reply because defendant's "reply did not raise any new arguments warranting a sur-reply").

Defendants' arguments are simply replies to arguments raised by Hernandez in his response (Dkt. 20). None of the reasons for a sur-reply listed in Hernandez's motion demonstrate otherwise. In particular, Hernandez argues that none of the exhibits attached to Defendants' reply (*see* Dkts. 26-1, 26-2, 26-3, 26-4, and 26-5) save one were produced to Hernandez and that "even if the late-filed exhibits are excluded, Hernandez should be allowed an opportunity to respond because they have already been put before the Court." (Dkt. 27 at 2). Notably, Hernandez does not state which exhibit was previously produced to him. The Court therefore reviewed all the exhibits and noted that they were used to reply to Hernandez's arguments in his response that he is "functionally illiterate" (*compare* Dkt. 20 at 1, 3–4 *with* Dkt. 26 at 11) and that the agreement is substantively unconscionable (*compare* Dkt. 20 at 7–10 *with* Dkt. 26 at 13). In any case, as the Court's decision concerning Defendants' Opposed Motion to Compel Arbitration and Dismiss Complaint (Dkt. 12) would be the same whether or not it considered the exhibits attached to Defendants' reply, this argument is unavailing. Accordingly, Hernandez's motion is **DENIED**.

## II.    **Defendants' Opposed Motion to Compel Arbitration and Dismiss Complaint**

The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply

with an arbitration agreement." *Am Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); *see also* 9 U.S.C. § 4. Section 4 of the FAA provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. To determine whether the parties agreed to arbitrate the particular type of dispute at issue, the court must consider two issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement. *McCann v. Am. Homes 4 Rent.*, No. 4:19-CV-1879, 2020 WL 1429494 at *2 (S.D. Tex. Mar. 19, 2020) (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). The right to arbitrate a dispute, like all contract rights, is subject to waiver. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) (citing *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.1986)). Whether the parties agreed to arbitrate and if waiver applies are the issues considered in turn below.

### a. There is a valid agreement to arbitrate.

The Court finds there is a valid agreement between the parties to arbitrate. Hernandez signed a receipt and acknowledgment form on November 7, 2012 concerning "the attached Mutual Agreement to Resolve Dispute and Arbitrate Claims," which states "I acknowledge receipt of the Mutual Agreement to Resolve Disputes and Arbitrate

Claims." (Dkt. 12-3 at 2). Hernandez does not dispute that he did not opt out of the agreement using the method referenced in the form and described in the agreement. (*See* Dkt. 12-2 at 1 (form stating, *inter alia*, that the "attached Mutual Agreement . . . describes the new program in detail, including: . . . Steps you must take if you wish to decline to participate in the new program"); Dkt. 12-3 at 2 ("[T]he Company is electing to allow employees employed by the Company prior to the effective date of this Agreement to exclude themselves from the arbitration process by notice given to the Company within thirty (30) days after their receipt of a copy of this Agreement."). Hernandez's continued employment with Defendants until 2023 confirmed his acceptance of the agreement. (Dkt. 1 at 3); *see In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.").

Furthermore, the Court finds that Hernandez's claims fall within the scope of the arbitration agreement. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996); *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (any doubts concerning scope should be resolved in favor of arbitration). "In applying state law, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb,* 89 F.3d at 258 (internal quotation marks omitted) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). Hernandez asserts claims for discrimination under Chapter 21 of the Texas Labor Code, the Americans with

Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967. (Dkt. 1 at 10–12). The arbitration agreement at issue here requires arbitration of "any and all disputes, including statutory and other claims, not resolved through the grievance process." (Dkt. 12-2 at 2). The agreement specifically requires the following claims to be submitted to arbitration: "any and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in a court, including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; . . . the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws . . . ." (Dkt. 12-2 at. 2). Because Hernandez signed the form acknowledging receipt of the agreement and the agreement covers the scope of the claims asserted, the Court finds there is a valid arbitration agreement.

### b.  The agreement is not procedurally or substantively unconscionable.

Hernandez argues that the agreement should not be enforced because it is procedurally and substantively unconscionable. (Dkts. 20, 23). The Court finds that the agreement is neither procedurally nor substantively unconscionable. "In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, this Court looks to Texas state law to determine whether the arbitration

agreements here are unconscionable. *See id.* In determining the arbitration agreement's validity, "a court may not construe the agreement differently from how it would construe contracts generally under state law, nor may a court rely on the uniqueness of an arbitration agreement as a basis for a state-law holding that enforcement would be unconscionable." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) "Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." *Carter*, 362 F.3d at 301 (citing *In re Halliburton Co.*, 80 S.W.3d at 572); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) ("A party opposing an arbitration agreement bears the burden of defeating it.").

*—Procedural unconscionability*

"To support a finding of procedural unconscionability, the circumstances surrounding the adoption of the agreement must be shocking." *Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *3 (Tex. App. Apr. 27, 2023) (citing *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App. 2013)). "The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280

F.3d 1069, 1077 (5th Cir.), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002).

Hernandez argues that the agreement is procedurally unconscionable because Spanish is his primary language, he can barely read and write English, he has myopia (which affects his ability to read), and no one explained the agreement or receipt and acknowledgment form to him even though the HR person knew about his "substantial limitations." (Dkt. 20 at 4–5; Dkt. 20-1 (hereinafter "Hernandez Decl.") at 1–3, 9). Hernandez states further that he signed the form because he was "told to do so" (although he does not state who told him) and he would not have signed the document if anyone had told him that the document "would not allow me to file a lawsuit in court if something bad happened to me and I didn't have a job." (Dkt. 20 at 5; Hernandez Decl. at 9). And he argues documents Defendants produced relating to the rollout of their arbitration program in 2012 show that employees would be penalized through "appropriate discipline and/or counseling" if they opted out of the arbitration process. (Dkt. 23 at 3.)

The Court finds Hernandez's arguments unpersuasive. Although Hernandez attempts to analogize this case to *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937 (S.D. Tex. 2001) and *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370 (Tex. App. 1999), he cannot. In the former case, the court found the arbitration agreements procedurally unconscionable where the plaintiffs were "*illiterate in that they did not speak and hence could not read English,*" the contracts they signed were in English, they were not given a translation of the agreements, and they "testified that *they were pressured into*

*signing them*." *Prevot*, 133 F. Supp. 2d at 940 (emphasis added); *see id.* at 941 n.3 ("The Court predicts that the Texas Supreme Court would hold that while illiteracy of the person making a contract does not by itself make the contract unconscionable, when as here there is also a language barrier and the person was pressured into signing the agreement quickly, the Court would be well within its discretion to find the contract to be procedurally unconscionable."). In the latter case, a Texas Court of Appeals found that a trial court did not abuse its discretion in denying a motion to compel arbitration where the employees who presented the employee "with the documents purporting to contain his agreement to arbitrate *did not themselves understand the agreement*," the employee "*had no one to explain the document to him* and did not understand it," and "[t]esting by a licensed psychologist showed that [the employee] was functionally illiterate and had a premorbid reading disorder." *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d at 377 (emphasis added).

Here, by contrast, Hernandez does not speak and read solely in Spanish; although that is his primary language, his "able to read and write in English" although barely. (Hernandez Decl. at 1–3). He can read and understand at least some documents in English, as he states that to "understand *most* documents in English, someone needs to explain to [him] what they say" and that he used to receive work orders "verbally *or in writing*" although he had to use a machine to make the words larger on the written work orders. (Hernandez Decl. at 2, 4 (emphasis added)). His eye condition also does not render him unable to read: as noted, he would use a machine to make words larger on his written work orders, and he has "difficulty reading small text *without straining and using visual aids*."

(*Id.* (emphasis added)). Notably, Hernandez has not stated that the size of the text on the form was too small for him to read, that he requested assistance reading the form, or that he was denied access to visual aids or other assistance.

In any case, "[i]t has long been recognized" under Texas law that "illiteracy or language barriers . . . will not relieve a party of the consequences of his contract." *Micocina, Ltd. v. Balderas-Villanueva*, No. 05-16-01507-CV, 2017 WL 4857017, at *6 (Tex. App. Oct. 27, 2017); *In re Ledet*, No. 04-04-00411-CV, 2004 WL 2945699, at *5 (Tex. App. Dec. 22, 2004) ("Whether a party is illiterate or incapable of understanding English is not a defense to a contract."). If Hernandez was not able to read the contract, it was "his duty to find some reliable person to read and explain it to him before he sign[ed] it." *Micocina, Ltd.*, No. 05-16-01507-CV, 2017 WL 4857017, at *6. Hernandez cannot place that duty at his employer's door. *See Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *5 (Tex. App. Apr. 27, 2023) ("Without proof of a confidential or fiduciary relationship, [employer] had no duty to explain the contents of the arbitration agreement to [employee]."); *see, e.g.*, *id.* at *4–*5 (former employee failed to meet burden to establish procedural unconscionability where trial court could have found that employer was "aware of her heavy accent, did not provide her with the Spanish-language version of the arbitration agreement, and told her that the documents were 'standard forms'").

Indeed, unlike the employee in *In re Turner Bros. Trucking Co., Inc.*, Hernandez has not adduced any evidence that those who presented the agreement and form to him did not understand the agreement or that he had no one to explain the documents to him. There

is no evidence that Hernandez even asked anyone–including the HR person he knew "very well"—to explain the documents to him, let alone any evidence that his employer refused to provide him with assistance in understanding or clarification.[2] (*See* Hernandez Decl. at 3). Hernandez also does not point to any evidence that he was pressured into signing the arbitration agreement like the plaintiffs in *Prevot*—although he states that he signed the form because he was "told to do so," he does not state who told him to do so or indicate that he felt pressured to do so. (*See* Hernandez Decl. at 9).

If employees were penalized for opting out or refusing to sign the form, that is not enough to render the agreement procedurally unconscionable. Even if Defendants had told Hernandez to accept the arbitration process or leave, that would not be enough. "Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms." *In re Halliburton Co.*, 80 S.W.3d at 572.

Hernandez's final argument—that he would not have signed the form if someone had explained it "would not allow me to file a lawsuit in court if something bad happened to me and I didn't have a job"—is also unavailing. "[T]estimony that a party is

---

[2] Hernandez argues in his Supplemental Response that the Defendants' produced documents show the agreement was procedurally unconscionable because Defendants' "only goal" was to get employees to sign the form regardless of whether they could read or understand it, that Defendants did not want employees to know about their ability to opt out, and that they violated their own "talking points" by not explaining to Hernandez that he was "waiving his right to file a lawsuit and would be directed to arbitration." (Dkt. 23-1 at 1–4.) But, as explained, the opt out procedure was referenced in the form and described in the agreement. It was Hernandez's duty to find someone to read and explain the documents to him, but there is no evidence Hernandez requested assistance from anyone, including his employer.

unsophisticated, or that she would not have signed the arbitration agreement if the concept of arbitration had been explained to her does not establish procedural unconscionability." *H-E-B, LP v. Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *4 (Tex. App. Oct. 12, 2021).

*—Substantive unconscionability*

Hernandez argues that the agreement (a) "limits the ability to have a qualified arbitrator hear th[e] case" because National Arbitration and Media, Inc. ("NAM"), the company selected in the arbitration agreement, has fewer arbitrators in the Houston area than the American Arbitration Association (AAA) and because the agreement provides for a smaller pool of potential arbitrators and strikes than the AAA does, and (b) limits discovery and the arbitrator does not have the authority to allow additional discovery. (Dkt. 20 at 7–9). Notably, his arguments are bereft of any case law citations.

As to the first argument, Hernandez has not directed to Court to a single case in which an agreement was found to be substantively unconscionable based on the grounds he identifies. Absent that, the Court is left with only Hernandez's speculation that the agreement limits having a qualified arbitrator. This Court must "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)). Thus, this argument must fail.

As to the second argument, Texas law compels us to leave determination of the enforceability of the discovery limitations to the arbitrator. "[L]imited discovery is one of arbitration's 'most distinctive features.'" *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 695 (Tex. 2008) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 599 (Tex. 2008)); *In re Boehme*, 256 S.W.3d 878, 886 (Tex. App. 2008) ("One of the benefits of arbitration is that it severely limits pretrial discovery."). And "arbitration's limits on discovery for *both* parties does not make it unconscionable." *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d at 695 (explaining that the "argument that 'streamlined' discovery makes arbitration unconscionable would nullify almost all arbitration agreements"). Discovery limitations that "operate to prevent effective presentation of [a party's] claim" are "unenforceable." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 358 (Tex. 2008). But "assessment of particular discovery needs in a given case and, in turn, the enforceability of limitations thereon, is a determination . . . best suited to the arbitrator as the case unfolds." *Id.*; *see In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009) ("[O]rdinarily the arbitrator, rather than the trial court, will be better able to determine the preclusive effects of discovery limitations in the arbitration agreement."); *see, e.g.*, *Moore v. Mansions Custom Homes, III, LP*, No. 6:12-CV-317, 2012 WL 12903080, at *3 (E.D. Tex. Oct. 15, 2012) (explaining that "whether to enforce discovery limitations within the Agreement is an issue for the arbitrator to decide; it is not an issue for the Court" and that if a "single deposition limit prevents effective presentation of [plaintiff]'s claims to the arbitrator, the arbitrator may render that provision of the Agreement unenforceable"); *Garcia v. Univ.*

*Behav. Health of El Paso, LLC*, No. EP-18-CV-254-KC, 2019 WL 13472245, at *3 (W.D. Tex. Mar. 13, 2019) ("[A]lthough discovery limitations that 'unreasonably impede effective prosecution' of a party's rights are unenforceable, . . . a provision that limits the number of depositions available to each party equally and empowers the arbitrator to increase the limits as necessary is not unconscionable." (citation omitted)).

Here, if the discovery limitations prevent effective presentation of Hernandez's claims to the arbitrator, the arbitrator can render that provision of the agreement unenforceable. The agreement specifically explains that the arbitrator shall rule on all questions regarding enforceability of the agreement, and it provides for deletion or reform of provisions that are construed to be "unlawful or unenforceable." Specifically, the agreement contains the following language:

> In the event that any provision of this Agreement shall be construed to be unlawful or unenforceable, and if the offending provision can be deleted without affecting the primary intention of the parties or can be reformed to effect the primary intention of the parties as expressed herein, then the offending provision shall be so deleted or reformed and the remainder of this Agreement shall remain in full force and effect as written. **IF THIS AGREEMENT IS DETERMINED TO BE UNENFORCEABLE, ANY CLAIMS BETWEEN YOU AND THE COMPANY RELATED TO YOUR EMPLOYMENT SHALL BE SUBJECT TO A NONJURY TRIAL IN THE FEDERAL OR STATE COURT THAT HAS JURISDICTION OVER THE MATTER.**

(Dkt. 12-2 at 6). Thus, the arbitrator can address Hernandez's concerns by determining whether any or all of the discovery limitations are unenforceable. *See e.g.*, *Streety v. Parsley Energy Operations, LLC*, No. MO:20-CV-49-DC-RCG, 2022 WL 2782819, at *8–*9 (W.D. Tex. May 3, 2022), *report and recommendation adopted*, No. MO:20-CV-00049-DC, 2022 WL 2783852 (W.D. Tex. June 17, 2022), *appeal dismissed sub nom. Streety v.*

*Parsley Energy Operations, L.L.C.*, No. 22-50644, 2022 WL 18301346 (5th Cir. Oct. 4, 2022) (finding, where agreement stated that if "any term, clause or provision of these Terms is held invalid or unenforceable, then that term, clause or provision will be severable," that "even if the discovery limitation [in the agreement] is found to be unconscionable, it could be severed from the arbitration provision, allowing the rest to remain intact and enforceable").

The Court notes also that Hernandez can request additional discovery under the arbitration agreement's terms. In June 2020, the Eastern District of Louisiana considered the discovery limitations in an arbitration agreement between that was almost identical to the arbitration agreement in this case. *See Reed v. Royal Sonesta Inc.*, No. CV 20-384-WBV-KWR, 2020 WL 3545392 (E.D. La. June 30, 2020). There, as here, the company selected National Arbitration and Mediation, Inc. as the "Arbitration Firm" and there, as here, it contained the following paragraph:

> vi. Rules of Arbitration. The arbitration shall be conducted by a single arbitrator. Except as provided in this paragraph, the arbitration shall be conducted in accordance with the Arbitration Firm's then current rules for the resolution of employment disputes. The arbitrator may, but shall not be required to, apply the Federal Rules of Civil Procedure (except for Rules 23 and 26) and the Federal Rules of Evidence. It will not be necessary to conduct pre-hearing discovery, but either you or the Company may do so. If either party elects to conduct prehearing discovery, each party shall be allowed only up to five (5) interrogatories, including subparts, five (5) requests for production, including sub-parts, and two (2) depositions. Electronic discovery will be limited to searches of e-mail accounts of no more than two (2) addresses for a twelve month period (or any shorter period for which e-mails are retained in the ordinary course) and a maximum of five (5) search terms or phrases will be permissible.

Ex. 1A to Def. Royal Sonesta Inc.'s Mot. to Dismiss Compl. and Compel Arbitration, *Reed*, No. CV 20-384-WBV-KWR, 2020 WL 3545392 (E.D. La. June 30, 2020), ECF No. 9-2 at 8–9; Dkt. 12-2 at 4–5. And there, as here, the applicable "rules for the resolution of employment disputes" were the NAM Employment Rules and Procedures effective September 18, 2019. Rule 11(B)(3)(iii) of that document states that the arbitrator may permit additional discovery "[u]pon the request of any Party" "if the Arbitrator finds that such additional discovery is not overly burdensome and will not unduly delay conclusion of the Arbitration." Our sister court noted "that nothing in the Agreement prevents Plaintiff from requesting and the arbitrator from allowing, additional discovery." *Reed*, No. CV 20-384-WBV-KWR, 2020 WL 3545392, at *7 (E.D. La. June 30, 2020) ("Defendants have presented the Court with evidence suggesting that the applicable arbitration rules allow the arbitrator to permit additional discovery in this matter."). Here, too, nothing in the agreement prevents him from requesting and the arbitrator from allowing additional discovery. The arbitrator is best suited to assessing the particular discovery needs in this case, and the arbitrator can determine whether to grant Hernandez additional discovery and if the limits on discovery are unenforceable. Accordingly, Hernandez's second argument fails as well.

"[I]ndividuals seeking to avoid the enforcement of an arbitration agreement face a high bar," and Hernandez has not overcome that bar. *Carter*, 362 F.3d at 297. Accordingly, the Court finds that Hernandez's claims should be arbitrated.

### c.  This action should be stayed, not dismissed.

Defendants request dismissal of this case, but Hernandez asks that the Court stay the case in the event the Court grants the motion to compel arbitration. (Dkt. 12 at 8–10, Dkt. 20 at 9). The U.S. Supreme Court recently held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024). As the Court has concluded that this action involves an arbitrable dispute and Hernandez has requested a stay, the Court is compelled to stay the proceeding rather than dismiss it.

### III.    Conclusion

For the reasons stated above, the Court **DENIES** Hernandez's Motion for Leave to File Sur-Reply (Dkt. 27) and **GRANTS in part** and **DENIES in part** Defendants' Opposed Motion to Compel Arbitration and Dismiss Complaint. (Dkt. 12). This action is **STAYED** and the Court **ORDERS** this case to arbitration pursuant to the terms of the parties' agreement. The parties are **ORDERED** to provide a status report every 90 days.

SIGNED at Houston, Texas on August 27, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE